IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

SAVANNAH MARTIN and
KIMBERLY PIPPEN                                                           PLAINTIFFS

VS.                                   CASE NO. 04-CV-1048

BEMIS COMPANY and
PACE INTERNATIONAL UNION                                                  DEFENDANTS

### MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment as to Plaintiff Savannah Martin filed on behalf of the Defendant Bemis Company ("Bemis"). (Doc. No. 21). Martin has responded to the motion. (Doc. Nos. 45). Bemis has filed a reply to Martin's response. (Doc. No. 78). The matter is ripe for consideration.

### BACKGROUND

Bemis Company operates a plant in Crossett, Arkansas. The Crossett plant manufactures paper bags and is part of Bemis' Paper Bag Division. Bemis hired Martin, an African-American female, as an Inspector in the Sewing Department of its Crossett plant on February 19, 1985. Martin worked at Bemis until September 2, 2003 when she was terminated for fighting. At the time of her termination, Martin held the position of Assistant Operator in the Sewing Department.

During her employment with Bemis, Martin was a member of the PACE International Union. As a member, Martin was covered by the collective bargaining agreements between Bemis and PACE. These collective bargaining agreements covered a member's conditions of

employment including wage increases, work rules and job bidding and awards.  Under these agreements, jobs within the plant were filled in one of two ways–through automatic lines of progression within a department and job postings between departments which were filled by bid.

In connection with promotions through the automatic lines of progression, when there was an opening within a department, an employee was subject to an automatic promotion from his/her current job to the next job within the line of progression unless that employee froze him/herself in their current job.  If an employee froze themself, they would remain frozen for at least one year or until such time as they requestd to be unfrozen.

If a job could not be filled from within a department, the position would be posted and other employees outside that department could bid for the open position.  When this happened, the most senior employee would be awarded the job when the ability and qualifications of the applicants were relatively equal.  Management was the judge of an applicant's ability and qualifications subject to the collective bargaining agreement's grievance procedure.

In this case, Martin worked in the Sewing Department as an Inspector.  In October 1993, she bid for the position of Artist in the Graphic Arts department.  The posting asked for an experienced graphic artist.  Martin was not awarded the Artist job.  Instead, a white female with a degree in graphic art was awarded the job.  Martin did not file a grievance or complain about not being awarded this position.

Martin continued to work as an Inspector in the Sewing Department.  On March 6, 1996, Martin requested to be unfrozen from that position.  On June 25, 1996, after being unfrozen, Martin was promoted to Assistant Operator within the Sewing Department.  Martin remained in that position for two days at which time she requested to return to the job of Inspector.

2

In September 1997, Martin bid for the position of Senior Artist in the Graphic Arts Department. Martin was not awarded the job. The position was instead filled by a white female from outside the company. Martin did not file a grievance or complain about not being awarded the Senior Artist position.

Martin continued to work in the Sewing Department as an Inspector. On June 12, 2001, Martin again asked to be unfrozen from that position. On September 12, 2001, after Martin was unfrozen, she was promoted to an Assistant Operator within that department.

In November 2001, Martin bid for the job of Sample Maker which was a position outside the Sewing Department. The applicants for this job were interviewed and given a basic measurement and arithmetic test. Martin was interviewed for the position twice, once on December 13, 2001 and a second time on February 21, 2002. Martin also took the measurement test on which she scored a zero. Martin was not awarded the Sample Maker's job and was informed that to improve her chances of success in future openings of this nature she would need to improve her machine and product knowledge and basic math skills including fractions. The job was awarded to a white female on February 27, 2002. Martin did not file a grievance or complaint about not being awarded the job of Sample Maker.

Martin did not bid on any other jobs outside her department and no further openings occurred up the line of progression within her department into which Martin could advance. Therefore, Martin continued to work in the Sewing Department as an Assistant Operator until she was terminated for fighting.

On August 20, 2003, Martin was involved in an altercation at the plant with a co-worker named Cassandra Ford. Martin was suspended without pay pending an investigation of the

3

incident. On September 2, 2003, Martin was terminated for violating the collective bargaining agreement and company policy against fighting. Cassandra Ford was also terminated on account of the altercation. Martin did not file a grievance in connection with her termination, however, the Union did. The Union requested that Bemis reinstate Martin to her job. This request was denied by the company. The Union voted not to take Martin's termination grievance through to arbitration.

On January 16, 2004, Martin filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation against Bemis. On January 26, 2004, Martin received a Right to Sue Letter from the EEOC.

On April 26, 2004, Martin filed this action against Bemis. In the suit, Martin alleges that Bemis violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") by discriminating against her on the basis of her race and gender in the areas of promotion, job assignments, employment conditions and benefits, discipline and discharge. Martin also asserts these claims under 42 U.S.C. §1981, 42 U.S.C. §1983, the Equal Protection Clause of the 14th Amendment to the Constitution of the United States of America and the Civil Rights Act of Arkansas of 1993 ("ACRA"), Ark. Code Ann. §16-123-101, *et seq.* Martin also alleges that Bemis retaliated against her in violation of Title VII. The matter is now before the Court on Bemis' Motion for Summary Judgment.

## **STANDARD OF REVIEW**

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment;

The judgment sought shall be rendered forthwith if the pleadings, dispositions,

> answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. at 256.

## DISCUSSION

**I. Claims pursuant to Title VII, 42 U.S.C. § 1981 and the ACRA**

Martin alleges that Bemis discriminated against her on the bases of her race and gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*, 42 U.S.C. §1981 and the Civil Rights Act of Arkansas of 1993 ("ACRA"), Ark. Code Ann. §16-123-101, *et seq.* Martin also alleges retaliation under Title VII. In employment discrimination cases under Title VII, the Supreme Court has long applied the familiar three-step burden shifting framework set out in *McDonnell Douglas Corp. v. Green,* 41 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[1] Under *McDonnell Douglas,* the plaintiff must first establish a prima facie case of discrimination. If the plaintiff is able to do this, the burden of production then shifts to the defendant to assert a legitimate non-discriminatory reason for the alleged discrimination. If the defendant sets forth such a reason, the burden then shifts back to the plaintiff to establish that the asserted reason was merely a pretext for discrimination. Martin claims that she was discriminated against on the bases of her race and gender in the areas of employment conditions and benefits (hostile work environment), promotion and job assignments (failure to promote), and discipline and discharge (wrongful termination) in violation of Title VII. Martin also claims that Bemis retaliated against her in violation of Title VII. The Court will address each of these

---

[1] Claims under §1981 and the ACRA are analyzed using the same burden-shifting framework as Title VII claims. *See Putman v. Unity Health Sys.,* 348 F.3d 732, 735 n. 2 (8th Cir. 2003)(applying *McDonnell Douglas* to §1981 claim); *Crone v. United Parcel Serv., Inc.,* 301 F.3d 942, 945 (8th Cir. 2002)(applying *McDonnell Douglas* to ACRA claim). Therefore, the Court's analysis of Martin's Title VII claims equally applies to her claims under §1981 and the ACRA.

claims separately.

*Martin's Hostile Work Environment Claim*

In this case, Martin contends that she was subjected to a hostile work environment based upon her race and gender. In order to establish a prima facie case of hostile work environment, Martin must show that 1) she belongs to a protected class; 2) that she was subjected to unwelcome, severe or pervasive race-based or gender-based harassment; 3) that the harassment was because of membership in the protected group; 4) that the harassment affected a term, condition, or privilege of her employment; and 5) Bemis knew or should of known about the harassment but failed to take prompt and effective remedial action. *Diaz v. Swift-Eckrich, Inc.,* 318 F.3d 796, 800 (8th Cir. 2003)(*citing Carter v. Chrysler Corp.,* 173 F.3d 693, 700 (8th Cir. 1999)). To determine if Martin can make out her prima facie case of hostile work environment, the Court must apply the evidence before it to the elements required for such a case. First, Martin is an African-American female, therefore, she belongs to a protected class under the Act. Next, the Court looks to see if Martin was subjected to unwelcome, severe or pervasive harassment that affected a term, condition, or privilege of her employment.

In support of her racial hostile work environment claim, Martin points to two instances of unwelcome racial hostility within the workplace. The first is in connection with a racial slur by a co-worker and the second involves a noose being hung in the workplace during black history month.

The first instance of racial hostility to which Martin points involves a racial slur in the workplace. Martin contends that while she was doing rework for overtime Glenda Henderson, a white co-worker, used the phrase "sweating like a n....." in front of her, several other black

employees and a white supervisor. Martin did not complain about the remark but is of the belief that someone else did.[2] Martin does not know if any action was taken against Henderson. Martin also contends that after she was fired she heard about Henderson using the same phrase a second time. This time the matter was investigated and determined that Henderson did make the offensive remark on October 29, 2003. Henderson was given a final warning and informed that any future incidents of this type would result in her termination.

The second incident of racial hostility involves the hanging of a noose in the workplace during black history month. Martin contends that this happened every year during black history month, however, she only saw it once, in 2002, and only heard about it happening once, in 2001. In February 2002, Martin saw a dummy hanging in a noose in the press department's loading dock. The dummy's face had been darkened and the hair curled to look like an afro. The incident was reported to a supervisor who said he would look into it. Within a short time, the noose and dummy were taken down. Martin does not know who hung the noose up or if anyone was disciplined for it . Martin also heard of a second noose incident in July 2001 where a white employee hung a rope noose across a black co-worker's sewing machine. The matter was investigated and it was determined that the behavior was not intended as racial intimidation. The white employee was given a final warning for the incident.

In order for this unwelcome harassment to be actionable it must be severe and pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21,

---

[2] There is nothing in Henderson's file to indicate that a complaint was filed against her in connection with this remark and there is no evidence of any disciplinary action being taken.

114 S.Ct. 367, 126 L.Ed.2d 295 (1993). When such harassment is found to be severe and pervasive it is deemed to affect a term, condition, or privilege of employment. *Faragher v. City of Boca Raton,* 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). In determining whether sufficient evidence of a hostile work environment claim has been presented, the courts consider all of the attendant circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Ducan v. Gen. Motors Corp.,* 300 F.3d 928, 934 (8th Cir. 2002). Therefore, to satisfy the "high threshold of actionable harm," Martin must show her workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Ducan,* 300 F.3d at 934 (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "[M]ere utterance of an . . . epithet which engenders offensive feelings in a[n] employee . . . does not sufficiently affect the conditions of employment" to implicate Title VII. *Harris,* 510 U.S. at 21, 114 S.Ct 367 (internal quotation marks and citations omitted).

In reviewing the racially hostile conduct of which Martin complains, the Court finds that although Henderson's remarks were clearly offensive and the hanging of a noose is clearly seen as a threatening action, Martin has presented insufficient evidence to show that the workplace was "permeated with racially discriminatory intimidation, ridicule and insult." In almost twenty years of working at Bemis, Martin herself overheard a co-worker use the "n" word one time and saw a dummy in a hangman's noose once. While Martin claims to have heard about the use of this word after she was fired and the hanging of a rope noose over a co-worker sewing machine

in 2001,[3] this is not severe or pervasive enough to create an objectively hostile or abusive work environment–one that a reasonable person would find hostile or abusive  *See Jackson v. Flint Ink N. Am. Corp.,* 370 F.3d 791, 793-95 (8th Cir. 2004) *rev'd on other grounds,* 382 F.3d 869 (8th Cir. 2004); *Woodland v. Josheph T. Ryerson & Son, Inc.,* 302 F.3d 839 (8th Cir. 2002).  The conduct which Martin cites falls short of satisfying the second and fourth elements necessary for a prima facie case of racially hostile work environment.  Therefore, this claim must fail as a matter of law.

Martin also claims that she was subjected to a hostile work environment because of her gender.  In order to maintain such a claim, Martin must show that she was subjected to gender or sexual harassment in the workplace which interfered with her work performance or created an intimidating, hostile or offensive work environment.  *Rheineck v. Hutchinson Tech., Inc.,* 261 F.3d 751, 756 (8th Cir. 2001)  Martin has failed to produce any such evidence, therefore, her claim for gender based hostile work environment must also fail.[4]

*Martin's Failure to Promote Claim*

Martin claims that Bemis failed to promote her to a job to which she was qualified because of her race and gender[5] in violation of Title VII.  In order to establish a prima facie case

---

[3] Martin indicated in her deposition that a noose was hung in the workplace every year during black history month, however, she then stated that she only saw such a noose one time in 2002 and only heard about one in July 2001.

[4] In light of the above analysis and ruling in regards to Martin's Title VII hostile work environment claims, the Court finds that her claims for hostile work environment under 42 U.S.C. §1981 and the ACRA must also fail.

[5] In her deposition, Martin contends that she was kept in lower positions because she was a black female.  However, the evidence shows that once Martin unfroze herself from the Inspector position she was promoted to the position of an Assistant Operator.  Also, all

10

of discrimination based on a failure to promote, Martin must show 1) that she is a member of a protected class; 2) that she was qualified and applied for a promotion for which Bemis was seeking applications; 3) that she was rejected despite her qualifications; and 4) other similarly qualified employees who were not members of the protected class were promoted. *Lyoch v. Anheuser-Busch Companies, Inc.,* 139 F.3d 612, 614 (8th Cir. 1998). Martin satisfies the first element of her prima facie case–she is African American, therefore, she is in a protected class. However, Martin does not satisfy the second, third and fourth elements of her prima facie case.

Martin contends that she applied for three jobs outside her line of progression that she was qualified for and did not receive. The first was for an Artist position in 1993. The position required a person who had experience in graphic art. There is no indication that Martin had such experience or was otherwise qualified for the position other than a general drawing ability. The person who did receive the job was a white woman who she had a degree in graphic art and had worked in the company's Art Department as an intern. Martin did not show that this woman and she were similarly qualified for the position and that this woman was promoted instead, despite Martin's qualifications. Therefore, Martin does not make out a prima facie case of failure to promote as it pertains to the Artist position.

Martin also applied for the position of Senior Artist in 1997. Again, there is no indication that Martin was qualified for this position other than having a general drawing ability. The job was eventually filed by a white woman from outside the company. Martin did not show that this woman and she were similarly qualified for the position of Senior Artist and that this

---

the jobs for which Martin unsuccessfully bid were all filled by women. Therefore, Martin can not sustain a claim for failure to promote based of her gender.

woman was given the job despite Martin's qualification. Martin does not make out a prima facie case of failure to promote as to the Senior Artist position.

Finally, Martin applied for the position of Sample Maker in 2001. Each applicant was given a basic measurement/arithmetic test and interviewed in regards to the position. Martin did not do well on the test, in fact she scored a zero. She was interviewed twice for the position and neither time could she answer questions regarding the style and construction of the different bags made within the plant. Martin was not awarded the job and was informed that to improve her chances of success in future openings of this nature she would need to improve her machine and product knowledge and basic math skills including fractions. The job was filled by a white woman. Martin did not know anything about this woman's qualifications for the job, although, Bemis states that the woman passed both the test and the interview process. Martin has not produced any evidence showing that she was qualified for the Sample Maker's position other than her years of experience and general knowledge of bag making; and she has not shown that a similarly qualified white person received the job despite her qualifications.

Martin contends that this was the first time such a test was given in connection with the filing of this job. Although this may be true, it is not the place of this Court to sit as a super-personnel department and reexamine an entity's business decisions. *See Krenik v. County of LeSueur,* 47 F.3d 953, 960 (8th Cir. 1995)(quoting *Harvey v. Anheuser-Busch, Inc.,* 38 F.3d 968, 973 (8th Cir. 1994). An employer, not a federal court, is in the best position to determine what qualification are necessary to do a particular job. An employer has wide discretion to establish its requirements and qualifications for particular positions, so long as these requirements do not discriminate based upon impermissible characteristics. *See Ross v. Kan. City Power & Light*

*Co.,* 293 F.3d 1041, 1047 (8th Cir. 2002)(citing *Duffy v. Wolle,* 123 F.3d 1026, 1037-38 (8th Cir. 1997)). Martin also contends that she should have been given the opportunity to "learn" the job. But here again, it is not this Court's place to determine what minimum qualifications were necessary to "learn" a particular job. This is the job of the employer, not the courts.

Martin did not show that she was qualified for the position, that despite her qualifications she was rejected and that a white person with similar qualifications was promoted instead. Martin has not made out her prima facie case for a failure to promote claim based under Title VII.[6]

### Martin's Wrongful Termination Claim

Martin also alleges that she was fired from her job in violation of Title VII. In order to establish a prima facie case of wrongful termination, Martin must show 1) that she is a member of a protected class; 2) that she was meeting her employer's legitimate job expectations; 3) that she suffered an adverse employment action; and 4) that similarly situated individuals outside the protected class were treated differently. *Tolen v. Ashcroft,* 377 F.3d 879, 882 (8th Cir. 2004). Bemis has not raised the issue of whether Martin is able to prove her prima facie case of discrimination or not. Rather, it focuses on the premise that it had a legitimate non-discriminatory reason for firing Martin. Therefore, for the purposes of this motion, the Court will assume that Martin has successfully made out a prima facie case of discrimination, and will instead focus on the second and third steps in the *McDonnell Douglas* framework–whether Bemis' stated reason for Martin's termination was a pretext for discrimination.

---

[6] In light of the above analysis and ruling in regards to Martin's Title VII failure to promote claims, the Court finds that her claims for failure to promote under 42 U.S.C. §1981 and the ACRA must also fail.

According to Bemis, Martin was terminated for fighting which is a violation of company rules and the collective bargaining agreement between Bemis and the Union. Martin does not dispute that she was involved in a fight with Cassandra Ford on August 20, 2003. She does not dispute that fighting is in violation of company rules and the collective bargaining agreement. And, she does not dispute that such conduct is cause for immediate dismissal. What Martin does contend is that Bemis' reason for firing her was really a pretext for discrimination.

In support of this contention, Martin states that she believes the reason that she was terminated was her race and on account of the fights. However, mere speculation and belief that an asserted reason is pretext is not enough to defeat summary judgment, Martin must set forth specific facts from which the Court may infer such pretext. In order to do this, Martin contends that she was disciplined more harshly than white employees who engaged in similar conduct– that she was fired for fighting while several white employees were not. She claims that this disparate treatment shows that Bemis' reason for firing her was a mere pretext for discrimination.

Instances of disparate treatment can support a claim of pretext, but Martin must prove that she and the white employees who received favorable treatment were "similarly situated in all relevant respects." *Harvey v. Anheuser-Bush, Inc.,* 38 F.3d 968, 972 (8th Cir. 1994)(citations and internal quotation marks omitted). "Employees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways." *Id.* Here, Bemis determined that Martin and Cassandra Ford were involved in fighting and they were fired. Only those individuals who were determined to have been involved in fighting and were not fired are similarly situated employees. Martin has presented no evidence that indicates that

Bemis made a determination that the white employee in question were fighting and then refused to fire them. In fact, the evidence shows that in each of the instances in question it was determined by Bemis that these individuals were not fighting. The evidence also shows that if Bemis determined that any individual was fighting then they were terminated whether they were white, black, male or female.

After carefully reviewing the evidence presented by Martin, this Court is of the opinion that the instances in which white employees were allegedly disciplined less severely are not sufficiently similar to Martin's discharge to raise a triable issue of pretext. Absent evidence raising a reasonable inference that Bemis' nondiscriminatory reason was pretextual, Martin's wrongful termination claim must fail because she has not presented evidence from which a jury could find that a discriminatory reason motivated her discharge.

It appears to the Court that this claim is less about possible race discrimination than it is about whether Bemis' decision to discharge Martin, as opposed to some other employees that she believed where involved in fights, was fundamentally unfair or arbitrary. It has long been recognized, that "the employment discrimination laws have not vested in the federal courts the authority to sit as super personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that these judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 781 (8th Cir. 1995)(citations omitted).

Martin has not shown that Bemis' proffered reason for her termination was false *and* that discrimination was the real reason for her discharge. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Therefore, her claim for wrongful

termination under Title VII must fail.[7]

*Martin's Retaliation Claim*

Martin also alleges that Bemis retaliated against her in violation of Title VII. A claim for retaliation pursuant to Title VII is not based upon race or gender discrimination, but instead upon "an employer's actions taken to punish an employee who makes a claim of discrimination." *Haas v. Kelly Services, Inc.,* 409 F.3d 1030, 1037 (8th Cir. 2005). To establish a prima facie case of retaliation under Title VII, Martin must show 1) that she participated in a protected activity; 2) that Bemis took adverse employment action against her; and 3) that there is a causal connection between the protected activity and the adverse employment action. *Hunt v. Nebraska Public Power Dist.,* 282 F.3d 1021, 1028 (8th Cir. 2002). Martin admits that while she was working at Bemis she never complained to Bemis about any discriminatory activity, never filed a grievance with the Union and never filed a charge with the EEOC. Martin did not engage in a protected activity and, thus, can not satisfy the first prong of her prima facie case of retaliation under Title VII. Therefore, Martin's retaliation claim against Bemis must fail.[8]

**II. Claims pursuant to the Fourteenth Amendment to the U. S. Constitution**

Martin alleges that Bemis discriminated against her on the bases of her race and gender in violation of the Equal Protection Clause of the 14th Amendment to the United States

---

[7] In light of the above analysis and ruling in regards to Martin's Title VII wrongful termination claim, the Court finds that her claims for wrongful termination under 42 U.S.C. §1981 and the ACRA must also fail.

[8] Martin states in her deposition that Bemis retaliated against her because she had filed a worker's compensation claim. Such a claim does not fall under Title V but rather state law. *See* Ark. Code Ann. 11-9-107. Martin does not raise this state law claim in her Complaint and, thus, is not properly before the Court and will be disregarded.

Constitution. The 14th Amendment prohibits "any state from depriving any person of life, liberty, or property without due process of law" and from denying "any person within its jurisdiction the equal protection of the laws." This clearly applies to the acts of a state, not to the acts of private persons or entities. *Rendell-Baker v. Kohn,* 457 U.S. 830, 837-38, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Bemis is a private entity, not a state. Therefore, Martin's 14th Amendment claim against Bemis must fail.

### III. Claims pursuant to 42 U.S.C. § 1983

Martin alleges that Bemis discriminated against her on the bases of her race and gender in violation of 42 U.S.C. §1983. To state a claim for relief under § 1983, Martin must establish that she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). To act under color of state law, an entity must be characterized as a state actor and deprive a plaintiff of rights secured by United States laws or the Constitution. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Therefore, the ultimate issue in determining whether a person or entity is subject to suit under § 1983 is whether the alleged infringement of federal rights was "fairly attributable to the state?" *Rendell-Baker,* 457 U.S. at 838. Bemis is a private company. There is no evidence that Bemis undertook any action that could be fairly attributable to the state. Bemis is not a state actor and can not be liable under §1983. Therefore, Martin's §1983 claim against it must fail.

### **CONCLUSION**

Based upon the foregoing reasons, the Court finds that Defendant Bemis Company's

Motion for Summary Judgment as to Plaintiff Savannah Martin should be and hereby is **granted**. A judgment of even date, consistent with this Opinion, will be issued.

IT IS SO ORDERED, this 10th day of February, 2006.

                                              /s/Harry F. Barnes
                                          Hon. Harry F. Barnes
                                          United States District Judge