IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

SAVANNAH MARTIN and
KIMBERLY PIPPEN                                                                PLAINTIFFS

VS.                                         CASE NO. 04-CV-1048

BEMIS COMPANY and
PACE INTERNATIONAL UNION                                                       DEFENDANTS

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment as to Plaintiff Kimberly Pippen filed on behalf of the Defendant Bemis Company ("Bemis"). (Doc. No. 24). Pippen has responded to the motion. (Doc. No. 45). Bemis has filed a reply to Pippen's response. (Doc. No. 77). The matter is ripe for consideration.

## BACKGROUND

Bemis Company operates a plant in Crossett, Arkansas. The Crossett plant manufactures paper bags and is part of Bemis' Paper Bag Division. Bemis hired Pippen, an African-American female, on September 6, 1990 as a general laborer. Pippen worked at Bemis until December 2, 2003 when she was terminated for fighting. At the time of her termination, Pippen held the position of Inspector in the Pasted Valve Department.

During her employment with Bemis, Pippen was a member of the PACE International Union. As a member, Pippen was covered by the collective bargaining agreements between Bemis and PACE. These collective bargaining agreements covered a member's conditions of employment including wage increases, work rules and job bidding and awards. Under these

agreements, jobs within the plant were filled in one of two ways–through automatic lines of progression within a department and job posting between departments which were filled by bid.

In connection with promotions through the automatic lines of progression, when there was an opening within a department, an employee was subject to an automatic promotion from his/her current job to the next job within the line of progression unless that employee froze him/herself in their current job. In an employee froze themselves, they would remain frozen for at least one year or until such time as they requested to be unfrozen.

If a job could not be filled from within a department, the position would be posted and other employees outside that department could bid for the open position. When this happened, the most senior employee would be awarded the job when the ability and qualifications of the applicants were relatively equal. Management was the judge of an applicant's ability and qualifications subject to the collective bargaining agreement's grievance procedure.

In this case, Pippen was hired into the General Labor Pool in September 1990. By December 1990, Pippen was working as an Inspector in the Pasted Valve Department. At the end of December 1990, Pippen was offered the opportunity to progress within the Pasted Valve Department to the job of Bottom Feeder. Martin turned the promotion down and froze herself as an Inspector, even though the Bottom Feeder job paid more. In February 1992, Pippen was, again, offered the opportunity to progress to the job of Bottom Feeder and, again, she turned it down, freezing herself as an Inspector. In March 1993, Pippen was, once again, offered the opportunity to progress. This time she was offered the job of Feeder/Assistant Operator and, again, Pippen turned the promotion down. In May 1995, Pippen was offered the opportunity to progress to the position of Assistant Operator within the Pasted Valve Department and turned it

down. In September 1998, Pippen was, once again, offered the job of Assistant Operator within the Pasted Valve Department and, once again, she turned it down. Pippen remained as an Inspector within the Pasted Valve Department until her termination in 2003.

In September 1993, Pippen bid on a job outside her department. She bid for the position of Feeder/Inspector in the Sewing Department. On October 4, 1993, Pippen was awarded the job and transferred to the Sewing Department. However, on the same day that she was awarded the job, Martin indicated that she wished to return to the Pasted Valve Department where she was, again, frozen as an Inspector. This is the only job Pippen bid on during her tenure at Bemis.

While Pippen worked at Bemis, there were plant rules in effect that prohibited a broad range of conduct. This conduct was broken down into categories ranging from serious to less serious. The conduct that was considered serious by the company would normally result in an employee's immediate termination. Pippen was aware of these rules.

During her employment, Pippen was disciplined 25 times. The majority (17) of these incidents involved less serious conduct such as attendance violations and taking excessive time during breaks, four involved poor quality or AIB violations (procedures required by the American Institute of Baking in making its bags), three involved arguing or insubordination and using offensive or foul language and one involved fighting. All of these incidents resulted in Pippen being given either a verbal or a written warning, except one resulted in a 3-day suspension and another her discharge. Pippen filed a grievance with the Union in connection with a 2001 write up she received for poor quality. The Union submitted the grievance to the company, but it was not pursued to arbitration. She also filed a grievance in connection with the 2001 write up/suspension for insubordination. The Union submitted the grievance to the

company, but it was not taken to arbitration. Pippen also filed a grievance against the company when she was terminated in 2003. The grievance was presented to the company but it was not taken to arbitration.

Under the collective bargaining agreements, Pippen could also file a grievance against the company if she felt that the company was not abiding by the terms of the collective bargaining agreement. Pippen filed two such grievance –one in 2000 in connection with a missed overtime assignment and one in 1998 in connection with her being moved from the position of Inspector. Both of these grievances were submitted to the company and rectified.

Pippen also filed two complaints against Bemis with the Equal Employment Opportunity Commission ("EEOC"). The first complaint was filed in 1993 and concerned a shift assignment. The second was filed in 2001 and was in connection with a staffing decision made regarding inspectors in the Pasted Valve Department. Both complaints were dismissed by the EEOC with no finding of probable cause.

On November 23, 2003, Pippen was involved in an altercation at the plant with a co-worker named Jody Edwards, a white male. On November 24, 2003, Pippen was suspended without pay pending an investigation of the incident. On December 2, 2003, Pippen was terminated for violating the collective bargaining agreement and company rules against fighting and threatening or using abusive language toward another employee. Jody Edwards was also terminated on account of the altercation. Pippen filed a grievance in connection with her termination. The Union requested that Bemis reinstate Martin to her job. The request was denied by the company. The Union voted not to take Pippen's termination grievance to arbitration.

4

On January 20, 2004, Martin filed a Charge of Discrimination with the EEOC alleging race and sex discrimination and retaliation against Bemis. On January 29, 2004, Pippen received a Right to Sue Letter from the EEOC.

On April 26, 2004, Pippen filed this action against Bemis. In the suit, Pippen alleges that Bemis violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") by discriminating against her on the basis of her race and gender in the areas of promotion, job assignment, employment conditions and benefits, discipline and discharge. Pippen also asserts these claims under 42 U.S.C. §1981, 42 U.S.C. §1983, the Equal Protection Clause of the 14th Amendment to the Constitution of the United States of America and the Civil Rights Act of Arkansas of 1993 ("ACRA"), Ark. Code Ann. §16-123-101, *et seq.* Pippen also alleges that Bemis retaliated against her in violation of Title VII. The matter is now before the Court on Bemis' Motion for Summary Judgment.

## **STANDARD OF REVIEW**

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment;

> The judgment sought shall be rendered forthwith if the pleadings, dispositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

## DISCUSSION

**I. Claims pursuant to Title VII, 43 U.S.C. §1981 and the ACRA**

Pippen alleges Bemis discriminated against her on the bases of her race and gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.,* 42 U.S.C. §1981 and the Civil Rights Act of Arkansas of 1993 ("ACRA"), Ark. Code Ann. §16-

123-101, *et seq.* Pippen also alleges retaliation under Title VII. In employment discrimination cases under Title VII, the Supreme Court has long applied the familiar three-step burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 41 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[1] Under *McDonnell Douglas,* the plaintiff must first establish a prima facie case of discrimination. If the plaintiff is able to do this, the burden of production then shifts to the defendant to assert a legitimate non-discriminatory reason for the alleged discrimination. If the defendant sets forth such a reason, the burden then shifts back to the plaintiff to establish that the asserted reason was merely a pretext for discrimination. Pippen claims that she was discriminated against on the bases of her race and gender in the areas of employment conditions and benefits (hostile work environment), promotion and job assignments (failure to promote), and discipline and discharge (wrongful termination). Pippen also claims that Bemis retaliated against her. The Court will address each of these claims separately.

*Pippen's Hostile Work Environment Claim*

In this case, Pippen contends that she was subjected to a hostile work environment based upon her race and gender. In order to establish a prima facie case of hostile work environment, Pippen must show that 1) she belongs to a protected class; 2) that she was subjected to unwelcome, severe or pervasive race-based or gender-based harassment; 3) that the harassment was because of membership in the protected group; 4) that the harassment affected a term,

---

[1] Claims under § 1981 and the ACRA are analyzed using the same burden-shifting framework as Title VII claims. *See Putman v. Unity Health Sys.,* 348 F.3d 732, 735 n. 2 (8th Cir. 2003)(applying *McDonnell Douglas* to § 1981 claim); *Crone v. United Parcel Serv., Inc.,* 301 F.3d 942, 945 (8th Cir. 2002)(applying *McDonnell Douglas* to ACRA claim). Therefore, the Court's analysis of Pippen's Title VII claims equally applies to her claims under § 1981 and the ACRA.

condition, or privilege of her employment; and 5) that Bemis knew or should of known about the harassment but failed to take prompt and effective remedial action. *Diaz v. Swift-Eckrich, Inc.,* 318 F.3d 796, 800 (8th Cir. 2003)(*citing Carter v. Chrysler Corp.,* 173 F.3d 693, 700 (8th Cir. 1999)). To determine if Martin can make out her prima facie case of hostile work environment, the Court must apply the evidence before it to the elements required for such a case. First, Pippen is an African-American female, therefore, she belongs to a protected class under the Act. Next the Court looks to see if Pippen was subjected to unwelcome, severe or pervasive harassment that affected a term, condition, or privilege of her employment.

In support of her claim, Pippen points to two instances which she believed demonstrated a racially hostile work environment. The first instance involves a racial slur made by a white co-worker outside of Pippen's hearing. She contends that she was told that Glenda Henderson used the phase "sweating like a n.....". Henderson did not use this phrase in front of Pippen, she only heard about it second hand. Pippen does not know if any action was taken against Henderson.

The second instance involves a racial slur which was allegedly made after she was terminated. Pippen contends that after she was fired she was told by a black employee that a white supervisor told him that he would take the black employee down the road and hang him. Pippen was told that the black employee filed a complaint about the incident and that the Human Resources Manager said it was being taken care of. There is no evidence before the Court on what action, if any, was taken against the white supervisor.

In order for this unwelcome harassment to be actionable it must be severe and pervasive enough to create a objectively hostile or abusive work environment –an environment that a reasonable person would find hostile or abusive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21,

114 S.Ct. 367, 126 L.Ed.2d 295 (1993). When such harassment is found to be severe and pervasive it is deemed to affect a term, condition, or privilege of employment. *Faragher v. City of Boca Raton,* 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). In determining whether sufficient evidence of a hostile work environment claim has been presented, the courts consider all of the attendant circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Ducan v. Gen. Motors Corp.,* 300 F.3d 928, 934 (8th Cir. 2002). Therefore to satisfy the "high threshold of actionable harm," Pippen must show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Ducan,* 300 F.3d at 934 (*quoting Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "[M]ere utterance of an . . . epithet which engenders offensive feelings in a[n] employee . . . does not sufficiently affect the conditions of employment" to implicate Title VII. *Harris,* 510 U.S. at 21, 114 S.Ct. 367 (internal quotations marks and citations omitted).

In reviewing the racially hostile conduct of which Pippen complains, the Court finds that although Henderson's remark are clearly offensive and the white supervisor's statement clearly threatening, Pippen has not presented sufficient evidence to show that the workplace was "permeated with discriminatory intimidation, ridicule and insult." In almost thirteen years of working at Bemis, Pippen never heard the "n" word once and only one time did she hear of its use. She never heard a statement threatening to hang her or anyone else and only heard about such a statement after she was terminated. This is not severe or pervasive enough to create an objectively hostile or abusive work environment–one that a reasonable person would find hostile

9

or abusive.[2] *See Jackson v. Flint Ink N. Am. Corp.,* 370 F.3d 791, 793-95 (8th Cir. 2004) *rev'd on other grounds,* 382 F.3d 869 (8th Cir. 2004); *Woodland v. Joseph T. Ryerson & Son, Inc.,* 302 F.3d 839 (8th Cir. 2002). The conduct which Martin cites falls short of satisfying the second and third elements necessary for a prima facie case of racially hostile work environment. Therefore, this claim must fail.

Pippen also claims that she was subjected to a hostile work environment because of her gender. In order to maintain such a claim, Pippen must show that she was subjected to gender or sexual harassment in the workplace which interfered with her work performance or created an intimidating, hostile or offensive work environment. *Rheineck v. Hutchinson Tech., Inc.,* 261 F.3d 751, 756 (8th Cir. 2001). There is no evidence that Pippen encountered any such gender or sexual harassment while she was employed at Bemis. In fact, when asked in her deposition if she ever heard any slurs or witnessed any offensive activities directed toward females, Pippen answered "No." Therefore, Pippen's claim for gender based hostile work environment must also fail.[3]

*Pippen's Failure to Promote Claim*

Pippen claims that Bemis failed to promote her in violation of Title VII. In order to establish a prima facie case of failure to promote, ippen must show 1) that she is a member of a

---

[2] Pippen contends in her Amended Brief that every year there was a hanging of a black effigy by Bemis employees. However, Pippen has not presented any evidence that she saw such a hanging or even knew about it. She has presented no evidence supporting this contention, therefore, it will not be considered by the Court.

[3] In light of the above analysis and ruling in regards to Pippen's Title VII hostile work environment claims, the Court finds that her claims for hostile work environment under 42 U.S.C. § 1981 and the ACRA must also fail.

protected class; 2) that she was qualified and applied for a promotion for which Bemis was seeking applications; 3) that she was rejected despite her qualifications; and 4) that other similarly qualified employees who were not members of the protected class were promoted. *Lyoch v. Anheuser-Busch Companies, Inc.,* 139 F.3d 612, 614 (8th Cir. 1998). Pippen satisfies the first element of her prima facie case–she is a African American female, therefore, she is in a protected class. However, Pippen does not satisfy the second or third elements of her prima facie case.

Pippen admits in her deposition that she was never denied any promotions while she worked at Bemis. In fact the evidence shows that Pippen was offered promotions within the Pasted Valve Department on five different occasions. Each time she turned the promotion down. She was also offered the job of Feeder/Inspector in the Sewing Department, which she bid on in September 1993. Pippen turned the job down and asked to return to her job as an Inspector in the Pasted Valve Department. In that Pippen was not denied any promotions, her failure to promote claims based on both race and gender must fail.

Pippen also claims that she was denied training which would place her in the position for promotion and advancement. However, Pippen admits in her deposition that there was not any training at Bemis that she felt she didn't get and she was not aware of anyone being denied a training opportunity because of their race or gender. In light of this admission and the fact that she turned down every promotion she was offered, Pippen's claim that she was denied training opportunities in violation of Title VII must fail.[4]

---

[4] In light of the above analysis and ruling in regards to Pippen's Title VII failure to promote claims, the Court finds that her claims for failure to promote under 42 U.S.C. § 1981 and the ACRA must also fail.

*Pippen's Wrongful Termination Claim*

Pippen also alleges that she was terminated from her job in violation of Title VII. In order to establish a prima facie case of wrongful termination, Pippen must show 1) that she is a member of a protected class; 2) that she was meeting her employer's legitimate job expectations; 3) that she suffered an adverse employment action; and 4) that similarly situated individuals outside the protected class were treated differently. *Tolen v. Ashcroft,* 377 F.3d 879, 882 (8th Cir 2004). Bemis has not raised the issue of whether Pippen is able to prove her prima facie case of discrimination or not. Rather, it focuses on the premise that it had a legitimate non-discriminatory reason for firing Pippen. Therefore, for the purposes of this motion, the Court will assume that Pippen has successfully made out a prima facie case of discrimination, and will instead focus on the second and third steps in the *McDonnell Douglas* framework–whether Bemis's stated reason for Pippen's termination was a pretext for discrimination.

According to Bemis, Pippen was terminated for fighting which is a violation of company rules and the collective bargaining agreement between Bemis and the Union. This is a legitimate non-discriminatory reason for Pippen's discharge. Pippen must now show that Bemis' proffered reason was merely a pretext for its discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506-507, 113 S.Ct 2742, 125 L.Ed2d 407 (1993).

Pippen contends that the she was not really fighting, therefore, Bemis' reason for firing her must have been a pretext for discrimination. However, it appears that Pippen is only guessing. She states in her deposition that she has no idea if she was terminated because of her race or gender. Such speculation and conjecture is not enough to show pretext on the part of an employer. Pippen must show that Bemis's reason for her discharge was both false and that

discrimination was the real reason. *Floyd v. State of Missouri Dep't of Social Services,* 188 F.3d 932, 937 (8th Cir. 1999).

In order to show the falsity of Bemis' reason, Pippen contends that she was not the aggressor in her altercation with Jody Edwards. She contends that she was only defending herself by pushing Edwards down. She contends that she was not really fighting. However, the key question in a discrimination case like this is not whether Pippen was truly fighting or not. The question is whether Bemis really believed that she was fighting, such that the termination was based on a non-discriminatory reason. *Scroggins v. University of Minnesota,* 221 F.3d 1042, 1045 (8th Cir. 2000). It is undisputed that eyewitnesses reported to Bemis that Pippen was using foul language during the altercation with Jody Edwards, that she did draw back like she was going to hit him and that she pushed him to the ground. Whether the decision Bemis drew from these facts was wrong or not is irrelevant. The law bars the Court from second guessing the wisdom of an employer's decision, even those based on arguably erroneous assumptions or credibility determinations. *See Evers v. Alliant Techsystems, Inc.,* 241 F.3d 948, 957 (8th Cir. 2001). These facts provided Bemis with a legitimate, non-discriminatory bases for Pippen's termination, even if she could now show that the witnesses were wrong in what they reported about the altercation.

Pippen argues that Bemis' explaination for her termination was a pretext for discrimination, because she was disciplined more harshly than white employees who engaged in similar conduct. Instances of disparate treatment can support a claim of pretext, but Pippen must prove that she and the white employees whom she alleged received more favorable treatment were "similarly situated in all relevant respects." *Harvey v. Anheuser-Bush, Inc.,* 38 F.3d 968,

972 (8th Cir. 1994)(citations and internal quotation marks omitted). "Employees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways." *Id.* Here, Bemis determined that Pippen and Jody Edwards were involved in fighting and they were fired. Only those individuals who were determined to have been fighting and who were not fired are similarly situated employees. The evidence shows that all the employees that Bemis determined to be involved in fighting were terminated whether they were white or black, male or female.[5] In fact, Jody Edwards is a white male and he was fired as a result of this altercation and the determination that he was fighting. Pippen's evidence of alleged disparate treatment is unpersuasive.

After reviewing the evidence presented by Pippen, the Court does not believe that enough evidence has been presented to infer that Bemis's proffered reason was pretext for discrimination. Pippen's wrongful termination claim must fail because she has not presented sufficient evidence from which a jury could find that a discriminatory reason motivated her discharge.

It appears to the Court that this claim is less about possible race discrimination than it is about whether Bemis' decision to discharge Pippen was fundamentally unfair or arbitrary. It has long been recognized, that the employment laws have not vested in the federal courts the authority to sit as super personnel departments reviewing the wisdom or fairness of the business

---

[5] Pippen contends that white females who are involved in fighting are not fired by Bemis However, there is no evidence that any white female has ever been involved in a fight at the plant. There is evidence of one white female who was attacked at the plant by her gun-wheeling husband, however, Bemis determined that this employee was not fighting. This decision will not be second guessed by the Court unless it can be shown that discrimination was the real motive for its decision. This has not been shown.

judgments made by employers, except to the extent that these judgments involve intentional discrimination. *See Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 781 (8th Cir. 1995)(citations omitted). That is not the case here.

Pippen has not shown that Bemis' proffered reason for her termination was false *and* that discrimination was the real reason for her discharge. Therefore, her Title VII claim for wrongful termination based upon race and gender must fail.[6]

### *Pippen's Retaliation Claim*

Pippen also alleges that Bemis retaliated against her in violation of Title VII. A claim for retaliation pursuant to Title VII is not based upon race or gender discrimination, but instead upon "an employer's actions taken to punish an employee who makes a claim of discrimination." *Haas v. Kelly Services, Inc.,* 409 F.3d 1030, 1037 (8th Cir. 2005). To establish a prima facie case of retaliation under Title VII, Pippen must show 1) that she participated in a protected activity; 2) that Bemis took adverse employment action against her; and 3) that there is a causal connection between the protected activity and the adverse employment action. *Hunt v. Nebraska Public Power Dist.,* 282 F.3d 1021, 1028 (8th Cir. 2002).

Before Pippen was terminated in 2003, she filed four grievance against Bemis in connection with disciplinary actions taken by Bemis–one in 1998, one in 2000, and two in 2001. She filed two grievances against Bemis when she felt the company was not abiding by the terms of the collective bargaining agreement–one in 1998 and one in 2000. Pippen also filed two complaints against the company with the EEOC–one in 1993 and one in 2001. Therefore, it is

---

[6] In light of the above analysis and ruling in regards to Martin's Title VII wrongful termination claim, the Court finds that her claims for wrongful termination under 42 U.S.C. § 1981 and the ACRA must also fail.

clear that Pippen participated in a protected activity under the Act. Next, the Court looks to see if Bemis subjected Pippen to any adverse employment action. Pippen admits that neither her pay nor her shift was changed after filing these grievances. However, she was fired which is clearly an adverse employment action against her. Finally, the Court must look to see if there is a causal connection between the filing of these grievance and Pippen's termination. The Court finds no causal connection. In support of her contention that Bemis was retaliating against her when it fired her in 2003, Pippen has offered nothing more than the fact that she filed previous grievances/complaints while she worked at Bemis. However, Pippen filed her last grievances or complaint with the EEOC in 2001. She was not fired until 2003–some two years after she last engaged in a protected activity. Her protected activity is not so close in time as to justify an inference of retaliatory motive on the part of Bemis. *See Feltmann v. Sieben,* 108 F.3d 970, 977 (8th Cir. 1997). Without more, the Court is unable to find any causal link between her protected activity and her termination. Because Pippen has not satisfied the third element of her prima facie case, her retaliation claim must fail as a matter of law.

**II. Claims pursuant to the Fourteenth Amendment to the U. S. Constitution**

Pippen alleges that Bemis discriminated against her on the bases of her race and gender in violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution. The 14th Amendment prohibits "any state from depriving any person of life, liberty, or property without due process of law" and from denying "any person within its jurisdiction the equal protection of the laws." This clearly applies to the acts of a state, not to acts of private persons or entities. *Rendell-Baker v. Kohn,* 457 U.S. 830. 837-38, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Bemis is a private entity, not a state. Therefore, Pippen's 14th

Amendment claim against it must fail.

### III. Claims pursuant to 42 U.S.C. § 1983

Pippen alleges that Bemis discriminated against her on the bases of her race and gender in violation of 42 U.S.C. §1983. To state a claim for relief under § 1983, Pippen must establish that she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). To act under color of state law, an entity must be characterized as a state actor and deprive a plaintiff of rights secured by United States laws or the Constitution. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Therefore, the ultimate issue in determining whether a person or entity is subject to suit under § 1983 is whether the alleged infringement of federal rights was "fairly attributable to the state?" *Rendell-Baker,* 457 U.S. at 838. Bemis is a private company. There is no evidence that Bemis undertook any action that could be fairly attributable to the state. Bemis is not a state actor and can not be liable under § 1983. Therefore, Pippen's § 1983 claim against Bemis must fail.

### **CONCLUSION**

Base upon the foregoing reasons, the Court finds that Defendant Bemis Company's Motion for Summary Judgment as to Plaintiff Kimberly Pippen should be and hereby is **granted.** A judgment of even date, consistent with this Opinion, will be issued.

IT IS SO ORDERED, this 10th day of February, 2006.

    /s/Harry F. Barnes
    Hon. Harry F. Barnes
    United States District Judge