IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

SAVANNAH MARTIN and
KIMBERLY PIPPEN                                                                                  PLAINTIFFS

VS.                                              CASE NO. 04-CV-1048

BEMIS COMPANY and
PACE INTERNATIONAL UNION                                                           DEFENDANTS

## MEMORANDUM OPINION

Before the Court is a Motion to Dismiss or For Summary Judgment[1] filed on behalf of the Defendant PACE International Union ("Union"). (Doc. No. 29). The Plaintiffs Savannah Martin and Kimberly Pippen have responded to the motion. (Doc. No. 45). The Union has filed a reply to Defendants' response. (Doc. No. 80). The matter is ripe for consideration.

## BACKGROUND

The Plaintiffs Savannah Martin and Kimberly Pippen worked for Bemis Company ("Bemis") at its paper bag plant in Crossett, Arkansas. During their employment, PACE International Union ("Union")was the exclusive bargaining agent for all production workers at Bemis' plant. The Plaintiffs were members of the Union, therefore, the terms and conditions of their employment were governed by the collective bargaining agreements between Bemis and the Union.

Under the term of the collective bargaining agreement, an employee could file a

---

[1] In light of the fact that the Defendant has filed affidavits and deposition excerpts supporting its motion, the Court is treating this motion as one for summary judgment.

grievance against Bemis when the employee felt that the company was not abiding by the terms of the collective bargaining agreement. The Union would present the employee's grievance to Bemis through the grievance procedure set out in the collective bargaining agreement. If the grievance was not settled, then the matter could be referred to arbitration. Martin never filed any such grievances against the company while she was employed at Bemis. Pippen filed three grievance in connection with disciplinary actions taken by the company. These grievances were presented to the company but were not pursued to arbitration. Pippen also filed two other grievances against the company–one in connection with overtime and one in connection with a job transfer. The Union presented these grievance to the company and both were rectified without arbitration.

In 2003, both Martin and Pippen were involved in separate altercations with co-workers. Each Plaintiff was suspended pending an investigation of her respective altercation. Both Plaintiffs were terminated for violating the collective bargaining agreement and the company's rules against fighting. The co-workers involved in the altercations were also terminated.

Grievances were filed by the Union challenging the Plaintiffs' respective terminations and requesting that they be reinstated. Bemis denied both grievances standing by their decisions to terminate the Plaintiffs. Their grievances were presented to the Union membership on the question of whether to take the Plaintiffs' terminations to arbitration. In separate meetings, the Union membership voted not to take their termination grievances to arbitration.

The Plaintiffs filed separate charges against the Union with the Equal Employment Opportunity Agency ("EEOC"). In Martin's EEOC charge against the Union, she contends that the Union failed to represent her in her discharge. In Pippen's charge, she contends that the

Union failed to represent her in her conditions of employment and discharge. Both Plaintiffs received Right to Sue Letters from the EEOC.

On April 26, 2004, the Plaintiffs filed suit against Bemis and the Union. In their suit, the Plaintiffs allege that they were subjected to unlawful discrimination on the bases of their race and gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII")*,* 42 U.S.C. 1981, 42 U.S.C. §1983, the Equal Protection Class of the United States Constitution and the Civil Rights Act of Arkansas of 1993 ("ACRA"), Ark. Code Ann. §16-123-101, *et seq.* They allege that they were retaliated against in violation of Title VII. The Plaintiffs' also specifically allege that the Union failed to fully and fairly represent their interests in these matters and it did so on a discriminatory bases, based on both race and gender. The matter is now before the Court on the Union's Motion for Summary Judgment.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment;

> The judgment sought shall be rendered forthwith if the pleadings, dispositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly

> can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

## DISCUSSION

*The Plaintiffs' Claim that the Union Breached its Duty of Fair Representation*

In their suit against the Union, the Plaintiffs have alleged that the Union failed to represent them.[2] In its role as a collective bargaining representative, a union has a legal duty to

---

[2] Martin alleges a failure of representation in regards to her discharge. Pippen alleges a failure of representation in regards to the conditions of her employment and discharge.

4

represent its members adequately, honestly and in good faith. *Air Line Pilots Ass'n Intern. v. O'Neill,* 499 U.S. 65, 75-76, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). This duty of fair representation is a judicially created duty arising out of the statutory grant of exclusive representation to unions under the National Labor Relations Act. *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed.2d 1048 (1953).

First, the Union claims that the Plaintiffs have missed their six month statute of limitations for filing suit against the Union for violating its duty of fair representation and asks that this claim be dismissed. It is true that a hybrid §301 suit[3] against a union for breach of its duty of fair representation is governed by a six (6) months statute of limitations. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). This six-month statute of limitations begins running when the employee "should reasonably have known of the union's alleged breach." *Scott, et. al. v. UAW Union,* 242 F.3d 837, 839 (8th Cir. 2001)(*quoting Evans v. Northwest Airlines,* 29 F.3d 438, 441 (8th Cir. 1994). In other words, it begins running when the grievance is rejected or the union decides not to pursue it. *Barlow, et. al. v. American National Can Co., et. al.,* 173 F.3d 640, 642 (8th Cir. 1999)(*citing Livingstone v. Schnuck Markets,* 950 F.2d 579, 583 (8th Cir. 1991)). In this case, it appears that the decisions not to take the Plaintiffs' grievances to arbitration were made in December 2003 and January 2004 respectively–less than six months prior to the filing of this suit. The six month statute of limitation had not run when this action was filed in April 2004. Therefore, the Union's Motion to Dismiss based upon the statute of limitation is denied.

---

[3] A §301 hybrid suit is one in which a plaintiff alleges a breach of the collective bargaining agreement against his/her employer and a breach of the duty of fair representation against his/her union.

A union's duty of fair representation is breached "when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). A union's conduct is arbitrary if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *O'Neil,* 499 U.S. at 67, 111 S.Ct. at 1130, quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). Mere negligence, poor judgment or ineptitude on the part of the union is insufficient to establish a breach of the duty of fair representation. *Smith v. United Parcel Service, Inc.,* 93 F.3d 1066, 1068 (8th Cir. 1996). A union does not act arbitrarily simply because it does not pursue a grievance that it has decided lacks merit. This is true even if a judge or jury later determines that the grievance is meritorious. *Vaca v. Sipes,* 386 U.S. at 193, 87 S.Ct. at 918. The union's duty of fair representation is a collective duty, owed equally to all members of the bargaining unit, thus, the union has the affirmative duty not to press grievances which it believes, in good faith, do not warrant such action. *Sanders v. Youthcraft Coats & Suits, Inc.,* 700 F.2d 1226, 1229 (8th Cir. 1983)(citations omitted). If a union believes in good faith that a grievance is without merit, it is under no duty to pursue that grievance, in fact, its duty is to the contrary–not to pursue such a meritless grievance.

In regards to the Plaintiffs' termination grievances, the union investigated the altercations that each Plaintiff was involved in. The Plaintiffs contend that the Union should have questioned additional witnesses and spoken up during their meetings with the company. However, these union representatives are not lawyers and it would be inappropriate to hold them to the same "demanding tests applied to a trained trial lawyer." *Stevens v. Highway, City & Air*

6

*Freight Drivers,* 794 F.2d 376, 378 (8th Cir. 1986). The union did investigate the incidents in question and did interview numerous witnesses to the altercations. Thus, there is no indication that the Union gave Plaintiffs' grievances only cursory attention. The evidence gathered and the witnesses interviewed clearly indicated that physical blows were exchanged during the altercations between the Plaintiffs and their co-workers.[4] In fact, both Martin and Pippen admit to either hitting or pushing the co-worker involved in their altercation. The Union was also aware of the strict prohibition against fighting set out in the collective bargaining agreement and the company's rules. In light of the factual and legal landscape before the Union, the Court can not say that its decision not to take Plaintiffs' terminations to arbitration was outside the 'wide range of reasonableness' as to be irrational. *O'Neill,* 499 U.S. at 67. Therefore, the Union's conduct was not arbitrary as a matter of law.

However, a union is protected by the "wide range of reasonableness" shield only if it acted in good faith. Thus, the question remains whether the Union breached its duty by failing to represent the Plaintiffs "without hostility or discrimination" and "with complete good faith and honesty." *Vaca,* 386 U.S. at 177, 87 S.Ct. at 910. To defeat summary judgment on this issue, a plaintiff must offer "evidence of fraud, deceitful action or dishonest conduct by the Union. *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971).

The Plaintiffs contend that the Union breached its duty when it became witnesses against them in their conflicts with the company. This pertains to the fact that Tommy Rivers, a Union Steward, was a witness to the altercation between Pippen and Jody Edwards and when asked by

---

[4] Martin hit Cassandra Ford and Pippen pushed Jody Edwards to the floor.

the company what he saw, he told them.  There is no indication that his account of the incident was false or untruthful, if fact, Rivers statement was clearly in line with what the other witnesses stated they saw.  The fact that a union representative honestly stated what he saw and did not withhold evidence from the company does not show fraud, deceitful action or dishonest conduct by the Union.

The Plaintiffs also contend that the Union failed to pursue their grievances because they were black and that there was a continuing pattern of discrimination against its members on the bases of race and gender.  However, they have presented no evidence showing that the Union treated their grievances any differently than those of white or male employees who were similarly terminated.  There is no evidence that the grievances of white or male employees who were terminated for fighting were taken to arbitration when the Plaintiffs were not.  In fact, the evidence shows that Jody Edwards' grievance in this regard was not taken to arbitration either.  There is no evidence of any hostile or discriminatory treatment toward the Plaintiffs on the part of the Union.

Pippen also alleges that the Union did not represent her in regards to the conditions of her employment.  However, the Union presented each of Pippen's various grievances to the company on her behalf.  There is no evidence that the Union's processing of these grievance was in a cursory or perfunctory manner or its decision not to take these grievances to arbitration was arbitrary, discriminatory, or in bad faith.

The Plaintiffs have failed to come forth with evidence establishing a genuine issue of material facts as to whether the Union acted in an arbitrary, discriminatory or bad faith manner in its representations of the Plaintiffs.  Thus, there is no breach of its duty of fair representation

as a matter of law.

### *The Plaintiff's Claim that the Union violated Title VII*[5]

The Plaintiffs claim that the Union failed to fairly represent them because they were black in violation of Title VII. A member of a collective bargaining unit may bring a claim against a union for unlawful discrimination under Title VII if the union breached its duty of fair representation and the breach was for discriminatory reasons. 42 U.S.C. §2000e-2(c)(1). In order to establish a prima facie Title VII case against a union based on a failure or refusal to represent a union member, a plaintiff must show that the union breached its duty of fair representation and the breach was motivated by the member's race, color religion, sex, or national origin. *Carter v. United Food & Commercial Workers, Local No. 789,* 963 F.3d 1078, 1082 (8th Cir. 1992)(*citing Martin v. Local 1513 and Dist. 118 of the IAMAW,* 859 F.2d 581, 584 (8th Cir. 1988).

In this case, the Court has already determined that the Union has not breached its duty of fairly representing the Plaintiffs in their grievances against Bemis. Therefore, the Plaintiffs have failed to satisfy the first element of their prima facie case. However, assuming that some question has been raised as to the fairness of the Union's representation, the Plaintiffs have not presented any evidence that shows that the decision not to take their grievances on to arbitration

---

[5] Discrimination claims under Title VII are analyzed under the familiar three-step burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 41 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Claims under 42 U.S. §1981 and the ACRA are also analyzed using this same burden-shifting framework. *See Putman v. Unity Health Sys.,* 348 F.3d 732, 735 n. 2 (8th Cir. 2003)(applying *McDonnell Douglas* to §1981 claim); *Crone v. United Parcel Serv., Inc.,* 301 F.3d 942, 945 (8th Cir. 2002)(applying *McDonnell Douglas* to ACRA claim). Therefore, the Court's analysis of the Plaintiffs' Title VII claims equally applies to their claims under §1981 and the ACRA.

was based upon any discriminatory animus on the part of the Union. There is no evidence that shows that the Union represented similarly situated employees who were not in the protected classed differently by taking their grievances further in the grievance process than it did the Plaintiffs. There is no evidence that the Union handled the Plaintiffs' grievance any differently that it did white or male employees. In fact, the evidence shows that the grievance of a white male employee (Jody Edwards) who was terminated for fighting was not taken to arbitration either.

The Plaintiffs also seem to allege that the Union itself discriminated against them on the bases of their race. Title VII prohibits labor organizations for discriminating against its members on the bases of race. *Jacobs v. United Steelworkers of America,* 51 Fed. Appx. 184, 185 (8th Cir. 2002). However, the Plaintiffs have failed to come forward with any evidence suggesting that similarly situated members were treated any differently by the Union or other evidence that suggests that discrimination motivated the Union's decisions and/or conduct.

The Union has also presented a legitimate nondiscriminatory reason for not pursuing the Plaintiffs' grievances. It determined that the Plaintiffs' grievance had no merit in light of the facts in each case and the company's prohibition against fighting. It believed that the Plaintiffs' grievances had little likelihood of winning, therefore, the Union voted not to take the grievances on to arbitration. The Plaintiffs contend that the vote of the Union membership on whether to pursue their grievances or not was along racial lines. Although this may be true, it does not prove discriminatory animus on the part of the Union in its decision to follow the vote of its members. There is no indication that the Union's proffered reason was a pretext for

discrimination. Therefore, Plaintiffs' claims under Title VII must fail.[6]

*The Plaintiffs' Claim that the Union is Vicariously Liable for Bemis' Conduct*

The Plaintiffs' also contend that the Union is liable for Bemis' discriminatory acts because it approved and acquiesced in the discrimination. Clearly, a union is prohibited from directly causing or assisting unlawful discrimination on the part of an employer. *See Thorn v. Amalgamated Transit Union,* 305 F.3d 826, 832 (8th Cir. 2002). However, the Court has held that the Plaintiffs were not subjected to any unlawful discrimination while they were employed by Bemis and their claims against Bemis have been dismissed . Therefore, the Union can not be held liable for something the Plaintiffs did not suffer. Their claim of vicarious liability against the Union must also fail.

*Plaintiffs' Claims pursuant to the 14th Amendment to the United States Constitution*

The Plaintiffs allege that the Union discriminated against them in violation of the Equal Protection Claus of the 14th Amendment to the United States Constitution. The 14th Amendment prohibits "any state from depriving any person of life, liberty, or property without due process of law" and from denying "any person within its jurisdiction the equal protection of the laws." This clearly applies to the acts of a state, not to the acts of private persons or entities. *Rendell-Baker v. Kohn,* 457 U.S. 830, 837-38, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). The Union is a private entity, not a state. Therefore, the Plaintiffs' 14th Amendment claim against the Union must fail.

*Plaintiffs' Claims pursuant to 42 U.S.C. §1983*

The Plaintiffs allege that the Union discriminated against them in violation of 42 U.S.C.

---

[6] In light of the above analysis and ruling in regards to the Plaintiffs' Title VII claims, the Court finds that their claims under 42 U.S.C. §1981 and the ACRA must also fail.

§1983. To state a claim for relief under § 1983, the Plaintiffs must establish that they were "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). To act under color of state law, an entity must be characterized as a state actor and deprive a plaintiff of rights secured by United States laws or the Constitution. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Therefore, the ultimate issue in determining whether a person or entity is subject to suit under § 1983 is whether the alleged infringement of federal rights was "fairly attributable to the state?" *Rendell-Baker,* 457 U.S. at 838. The Union is a private entity. There is no evidence that the Union undertook any action that could be fairly attributable to the state. The Union is not a state actor and can not be liable under §1983. Therefore, the Plaintiffs' §1983 claim against it must fail.

## **CONCLUSION**

Based upon the foregoing reasons, the Court finds that the Defendant PACE International Union's Motion to Dismiss or for Summary Judgment should be and hereby is **granted**. A judgment of even date, consistent with this Opinion, will be issued.

IT IS SO ORDERED, this 10th day of February, 2006,

           /s/Harry F. Barnes
       Hon. Harry F. Barnes
       United States District Judge